UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| PATRICIA CATRON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 08-110-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Patricia Catron ("Catron") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 11 and 12]. Through this action, Catron seeks to reverse the decision of an administrative law judge ("ALJ"), which concluded that the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. [Transcript, p. 20 ("Tr., p. ___")] However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. For the reasons discussed below, the Court will deny Catron's motion and grant the Commissioner's motion.

## I.      BACKGROUND

Catron protectively filed her application for Social Security Income ("SSI") on May 2, 2005, alleging disability beginning September 4, 1997. Her claim was denied initially on September 27, 2005, and upon reconsideration by the Appeals Council on December 19, 2005. Thereafter, on December 23, 2005, Catron filed a timely written request for an administrative hearing. On August 24, 2006, the ALJ, Hon. James P. Alderisio, presided over the administrative hearing in London, Kentucky. During this hearing, the ALJ received testimony from Catron and William Ellis, a vocational expert. Thereafter, on October 25, 2006, the ALJ issued a decision denying benefits to Catron, concluding that she was not disabled under the Social Security Act. [Tr., pp. 13–20]

At the time of the administrative hearing, Catron was 52 years old with a college education and a Master's degree in special education. [Tr., p. 393] She had previously worked as a substitute high school teacher, a full-time high school teacher, as well as a restaurant cook, waitress, and cashier. [Tr., pp. 394–95] Catron claims a disability due to impairments related to a back injury suffered as the result of an assault that occurred while she was teaching at Shepherdsville High School in 1997.[1] [Tr., p. 396] Catron alleges that her impairments cause the following symptoms: numbness, tingling, and pain in her hands and fingers,[2] intense headaches caused by cervical nerve damage, difficulty sitting, standing,

---

1.      The ALJ noted in his decision that Catron has given different accounts of how her back was injured to the different physicians she has seen since 1997. [Tr., p. 18]

2.      Catron claims that initially she only had pain in her left hand, but that after receiving spinal injections to ease the pain in the left hand, her right hand began bothering her as well. [Tr., p. 397–98]

walking, and driving, problems sleeping, and an inability to perform many daily tasks.  [Tr., pp. 396–99, 403–07]

After reviewing the medical evidence of record and the testimony presented at the hearing, the ALJ found that Catron suffers from the following severe impairments: "discogenic and degenerative disorders of the back and a history of essential hypertension." [Tr., p. 15] However, the ALJ found that Catron retained the residual functioning capacity ("RFC") to perform light exertion work with some limitations.  [Tr., pp. 17–18]  More specifically, the ALJ noted that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at the light exertion level, but the claimant can perform no fine manipulation with the right hand and no more than occasional gross manipulation with the right hand.  She requires a sit/stand option every 45-minutes and can perform no work involving hazardous machinery.  She has a seriously limited but not precluded ability to maintain attention and concentration.

[Tr., p. 17]  Based on these findings, the ALJ concluded that Catron "has not been under a 'disability' as defined in the Social Security Act, since May 2, 2005, the date the application was filed."  [Tr., p. 20]

## II.     LEGAL STANDARD

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v.*

-3-

*Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006); *see* 20 C.F.R. § 416.920(a)(4)(i)–(v).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 416.920(b).  Second, a claimant must show that she suffers from a severe impairment.  20 C.F.R. § 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 416.920(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine if she can do past work.  If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.   20 C.F.R. § 416.920(g).   The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Howard v. Comm'r of Soc. Sec.*,

276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r Soc.*

-5-

*Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

### III.   DISCUSSION

Catron raises several issues in this action.  First, she contends that the ALJ erred in finding that her impairments were not severe enough to meet or medically equal the requirements of the Listings of Impairments in Appendix 1, Subpart P of the regulations.  *See* 20 C.F.R. Part 404 Appendix 1 (Listing of Impairments); 20 C.F.R. § 416.925 (explanation of Listing of Impairments); 20 C.F.R. § 416.926 (explanation of "medical equivalence" of listed impairments).  Second, Catron contends that the ALJ failed to consider the cumulative effect of her impairments in determining that she was not disabled within the meaning of the Social Security Act and regulations.  Third, she argues that the ALJ failed to give proper deference to her treating physicians.  Finally, Catron generally asserts that the ALJ's decision is not supported by substantial evidence based on her testimony and the medical evidence in the record.  She prays that this Court grant her motion for summary judgment and remand the case to the Commissioner with directions to award benefits, or, in the alternative, remand this matter for further findings.

Conversely, the Commissioner asserts that the ALJ's decision denying benefits to Catron is supported by the evidence.  More specifically, he contends that the ALJ considered the cumulative effect of her impairment and properly determined that she was not disabled within the meaning of the Social Security Act and regulations.  Further, the Commissioner

asserts that the ALJ properly considered the treating physician's opinions and concluded they were not entitled to controlling weight, because the opinions were contradicted by other evidence. Finally, he asserts that Catron failed to meet her burden to show that her impairments meet or equal the requirements of the Listings of Impairments in Appendix 1, Subpart P of the regulations.

### A. Meeting the Impairments Listed in Appendix 1, Subpart P of the Regulations

When an ALJ determines if a claimant is disabled, the claimant carries the burden of proving that she "meets or equals a listed impairment." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment). The claimant's impairment must result from an anatomical, physiological, or psychological abnormality which can be shown using medically accepted clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.908. To meet this burden, the claimant must provide medical evidence showing that she suffers from an impairment that meets or medically equals one of the listed impairments. *Id.* ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and not only by your statement of symptoms."). *See also* 20 C.F.R. § 416.928 (defining symptoms, signs, and laboratory findings).

In her motion for summary judgment, Catron claims that "the medical evidence is clear and it does indicate evidence of intensity, frequency, and duration as to seriously interfere with Claimant's ability to function." [Record No. 11, p. 3] She further claims the

-7-

medical evidence establishes that she "could not possibly perform functions and activities due to the problems she suffers," and that "[w]ith these severe problems she could not possibly maintain a job." [*Id.*]

In the present case, the ALJ properly followed the five-step sequential evaluation process for determining whether Catron was disabled. In Step 3, the ALJ found that while Catron does suffer from severe impairments, the impairments do not qualify as a listed impairment. In assessing whether Catron's impairments met the required level of severity to qualify as a listed impairment, the ALJ analyzed her: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decomposition. [Tr., p. 16–17] After analyzing the evidence in the record, the ALJ found that, "the claimant's impairments do not result in 'marked' restrictions of activities of daily living, 'marked' difficulties in maintaining social functioning, 'marked' difficulties in concentration, persistence, or pace, or three or more episodes of decomposition, each of an extended duration." [Tr., p. 17]

Contrary to the assertions made in Catron's motion for summary judgment, the *Pain and Daily Activities Questionnaire*, which she herself filled-out, demonstrates that she is able to perform many daily functions despite her impairments. [Tr., p. 90–93] Further, although her motion asserts that "[w]ith these severe problems she could not possibly maintain a job," the *Work History Report* shows that Catron has been employed by schools, a restaurant, and Wal-Mart after September 4, 1997, the date she alleges she became disabled. [Tr., p. 94–101] Based on the evidence in the record, the ALJ's determination that Catron's

-8-

impairments are not sufficiently severe to qualify as a listed impairment is supported by substantial evidence.

### B.   Cumulative Effect of Impairments

Pursuant to 20 C.F.R. § 416.923, the ALJ is required to consider the "combined effect" of all the claimant's impairments in determining whether a medically severe combination of impairments exists.  However, if the ALJ determines that a claimant does not have a medically severe combination of impairments, the Social Security Act and regulations mandate a determination that the claimant is not disabled.  *See* 20 C.F.R. § 416.923 ("If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.").

Catron contends that she suffers from numerous severe physical impairments, and that the "cumulative affect [sic] of all of these were not taken into consideration by the ALJ." [Record No. 11, p. 3]  In support of this assertion, Catron directs the Court's attention to the Sixth Circuit's decision in *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066 (6th Cir. 1992).  In *Walker*, the Sixth Circuit reversed the decision of an ALJ because the medical evidence of record indicated that the combined effect of the claimant's impairments warranted a finding of disability.  *Id.* at 1071.  The court found that the ALJ erred because he "looked at each impairment in a vacuum and made two separate determination[s] as to whether each one, separately, would qualify Walker for disability."  *Id.*

The present case is distinguishable from *Walker*, because the record does reflect that the ALJ considered the cumulative effect of all of Catron's impairments.  After making

findings that Catron suffered from "discogenic and degenerative disorders of the back and a history of hypertension," the ALJ found that the combinations of these impairments did not meet or medically equal one of the listed impairments, a requirement in order to be found disabled.  20 C.F.R. § 416.920(d); [Tr., p. 15–17]  The ALJ specifically noted that:

> The record reflects the claimant is able to perform general household chores, prepare simple meals, do the laundry, manage money and medication, use the telephone, walk in her yard, fish, and take care of her pets. . . .  The claimant is able to function in an appropriate manner in the public domain in such places as doctor's offices, grocery stores, Social Security offices, and other facilities. . . .  The record reflects she enjoys solving puzzles, reading, and watching television.  She drives into town daily to check the mail, admitted that she follows written instructions very well, and that she copes well with stress.

[Tr., p. 17]  Based on her ability to perform these tasks despite her impairments, the ALJ found that "the claimant has only 'mild' limitations in activities of daily living, social functioning, and in her ability to concentrate, which would not preclude the performance of work activity." [*Id.*]  As result of these findings, the ALJ concluded that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  [Tr., p. 16]

Further, in posing the hypothetical questions to the vocational expert, the ALJ incorporated the cumulative effect of all the limitations associated with Catron's impairments, including her physical and mental limitations.  In his first hypothetical question, the ALJ posed the following scenario to the vocational expert:

> Okay.  Suppose I find that she can do light work with the following restrictions.  No climbing of ramps, ladders or scaffolding.  She should not be around any hazardous machinery.  That her ability to maintain ability [sic] and

-10-

concentrate is severely limited but not precluded.  That she'd be restricted in no fine manipulation with her right hand.  That she have a sit/stand option every 45 minutes.  Would there be jobs at the local level with such a, with such [sic] restrictions?

[Tr., p. 410]  The ALJ also posed a second hypothetical question to the vocational expert which asked the following:

Okay.  What if I was to find that she could only do sedentary work.  The same restrictions as in the prior hypothetical would still apply with the following additions.  No pushing or pulling with her right arm.  I guess we'd call that no reaching with the right arm.  No pushing or pulling with the feet.  And I guess that would be pedals.  Low stress jobs based on her testimony about the drug interaction and then how it makes her groggy and a little slow.  Would there be jobs locally or nationally for such an individual?

[*Id.*]  To both of these hypothetical questions, the vocational expert testified that there are jobs available in either the local and/or national economy that Catron could perform despite the hypothetical limitations.  [*Id.*]  However, the vocational expert testified that there would be no jobs locally or nationally based on the limitations in the ALJ's final hypothetical questions which asked:

Suppose I was to believe that, find her testimony and the evidence totally credible, that she had no demonstrated reliability, no useful ability for reliability, that her ability to understand, remember, and carry out even simple one and two step instructions would be limited but satisfactory and she'd have no useful ability to handle detailed instructions.  And her ability to deal with work stresses would be severely limited but not precluded.  With those restrictions, would there be jobs locally or nationally?

[Tr., p. 411]  These hypothetical questions posed to the vocational expert indicate that the ALJ adequately took into account the cumulative effect of Catron's impairments prior to reaching his decision that Catron was not disabled.

-11-

The ALJ thoroughly considered the combined effects of Catron's impairments in his decision as well as in his hypothetical questions posed to the vocational expert. Accordingly, the Court finds that the ALJ properly concluded that Catron did not have a medically severe combination of impairments that would qualify her as disabled.

### C.   The Opinion of the Treating Physician

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse*, 502 F.3d at 540 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997)). However, the "opinion of a treating physician is entitled to greater weight *only* if it is based on objective medical findings, and is not contradicted by substantial evidence to the contrary. The Commissioner may reject the opinion of a treating physician where good reasons are found to do so in the record." *Hare v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 773, 776 (6th Cir. 2002) (emphasis added). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004), the Sixth Circuit noted that a treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 416.927(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record.

In the present case, the ALJ properly rejected the opinion of Catron's physician, and clearly articulated the requisite "good reasons" for this conclusion. *See* 20 C.F.R. §

416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  In considering Dr. Lingreen's opinion, the ALJ thoroughly reviewed the record and medical evidence before him and concluded that these opinions were not entitled to controlling weight due to the contradictory evidence in the record.  In particular, the ALJ noted that:

> As for the opinion evidence, Dr. Lingreen opined on November 16, 2005, that the claimant could sit/stand/walk each 2-hours, occasionally lift/carry up to 10 pounds, but could not use her hands/feet for repetitive action, and could never bend, squat, crawl, climb, and reach above shoulder level.  Further she could perform no work involving unprotected heights, moving machinery, exposure to marked changes in temperature/humidity, and driving automotive equipment.  The undersigned declines to give controlling weight to this opinion as it is quite severe, does not appear to be related to the objective evidence, and his statement that Ms. Catron's function and activities of daily living are stable and being improved.  State agency medical opinions have also been considered and given appropriate weight as that of consultative examiner [Dr.] Santucci.

 [Tr., p. 19 (citations to record omitted)]  In his decision, the ALJ noted a number of inconsistencies between Dr. Lingreen's opinion of Catron and the evidence presented by Catron herself in the *Pain and Daily Activities Questionnaire*.  [Tr., p. 17–19, 90–93, 270] The ALJ also noted that his own observation of Catron's ability to stand, walk, and sit while testifying also conflicted with Dr. Lingreen's opinion.  [Tr., p 18].  These factors all led to the ALJ's conclusion that Dr. Lingreen's opinion should not be given controlling weight. *See* 20 C.F.R. § 416.927(d)(6) ( "When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.").

This Court agrees with the ALJ's analysis and conclusions regarding the opinion of Dr. Lingreen.  It is well-settled that the ultimate issue of disability is reserved to the Commissioner, not the treating physician.  *Kidd. v. Comm'r of Soc. Sec.*, 2008 U.S. App. LEXIS 13675, at *11 (6th Cir. June 25, 2008) (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)); *see also* 20 C.F.R. § 416.927(e).  "Thus, when a treating physician offers an opinion on an issue reserved to the Commissioner, such as whether a claimant is disabled, the ALJ need not accord the opinion controlling weight."  *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).  Additionally, "[w]hen a treating physician offers a conclusory opinion concerning a claimant's condition, the ALJ need not credit that view, especially if inconsistent with other diagnoses."  *Id.*  (citing *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)).

Here, the ALJ found that Dr. Lingreen's opinion regarding Catron's disability was not entitled to greater weight because of internal inconsistencies in Dr. Lingreen's report, as well as inconsistencies with other evidence.  Accordingly, because the ALJ fulfilled the procedural requirements of 20 C.F.R. § 416.927(d)(2) and articulated "good reasons" for not giving Dr. Lingreen's opinion controlling weight, and because his conclusion denying benefits is supported by substantial evidence as discussed below, the ALJ properly rejected Dr. Lingreen's opinions regarding Catron's disability.

### D.    Substantial Evidence Supports the ALJ's Decision

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of

-14-

credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). Notably, credibility determinations are particularly within the province of the ALJ and are "to be given great weight." *Cruse*, 502 F.3d at 542 (quoting *Walters*, 127 F.3d at 531). If supported by substantial evidence, the ALJ's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995).

Having examined Catron's claims, the Commissioner's response, and the administrative transcript, the Court finds that the ALJ's decision denying benefits is supported by substantial evidence. When assessing the credibility of the evidence presented in the record, this Court finds it important to point out that the ALJ appears to have given the most weight to the *Pain and Daily Activity Questionnaire* that Catron completed. [Tr., p. 16, 90–93] Rather than carrying her burden to show that she meets or equals the requirements of a listed impairment, Catron's own words appear to have been highly influential in convincing the ALJ that Catron was not under a disability as defined in the Social Security Act. [Tr., p. 16, 20]; *see* 20 C.F.R. § 416.927(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have."). Further, contrary to Catron's assertions, the ALJ adequately considered the medical evidence in the record, and the ALJ followed the procedural requirements by giving "good reasons" for denying to give Dr. Lingreen's opinion

-15-

controlling weight. Additionally, the hypothetical questions posed to the vocational expert during the administrative hearing demonstrate that the ALJ did consider all the evidence regarding the cumulative effect of Catron's impairments prior to making his findings. Although the ALJ did find that Catron suffers from severe impairments, substantial evidence supports the ALJ's conclusion that the combination of these impairments do not meet or equal any of the listed impairments. Accordingly, the Court finds that the ALJ's decision denying benefits is supported by substantial evidence.

## IV. CONCLUSION

For the reasons discussed herein, it is hereby **ORDERED** that:

(1)     Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 12] is **GRANTED**;

(2)     Plaintiff Patricia Catron's Motion for Summary Judgment [Record No. 11] is **DENIED**;

(3)     The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 18th day of September, 2008.



Signed By:

_Danny C. Reeves_  DCR

**United States District Judge**

-16-